**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN S. PICARD, | ) Case No. 1:23-CV-01416-JJH |
| | ) |
| Petitioner, | ) |
| | ) JUDGE JEFFREY J. HELMICK |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| | ) JENNIFER DOWDELL |
| SHELBIE SMITH, WARDEN, | ) ARMSTRONG |
| | ) |
| Respondent. | ) |
| | ) **REPORT & RECOMMENDATION** |

## I.  INTRODUCTION

Petitioner, John S. Picard ("Mr. Picard"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Picard was sentenced to a term of 40 years in prison after being convicted in two separate cases of multiple counts of sexual battery. Mr. Picard asserts five grounds for relief. Respondent, Warden Shelbie Smith ("Warden"), filed an answer/return of writ on July 11, 2025. (ECF No. 20). Mr. Picard filed a traverse on September 8, 2025. (ECF No. 23).

This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Mr. Picard's petition. (*See* ECF non-document entry dated July 24, 2023). For the reasons set forth below, I recommend that Mr. Picard's petition be DISMISSED. I further recommend that the Court not grant Mr. Picard a certificate of appealability.

## II.  RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by

1

clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C.

§ 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d

524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by

a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio

Court of Appeals for the Fifth Appellate District summarized the relevant facts as follows:

{¶ 2} In 1990, appellant was hired as the youth pastor at the Marion Avenue Grace Brethren Church in Mansfield, Ohio. In his position at the church, appellant and his wife Sherry had regular contact with teenage girls and young adult females in the church.

{¶ 3} Appellant formed close relationships with several of the girls in the youth group, distancing these girls from their family and friends. He referred to this smaller group as "the family," which was made up of appellant and his wife, several of the girls in the youth group, and eventually the girls' husbands as they grew older and married. As the leader, appellant controlled nearly every aspect of their lives. Appellant influenced where the girls lived, who they dated or married, and what cars they purchased. Appellant spoke of having a large piece of land where the "family" could live in a large house with separate wings, sharing a common kitchen and dining area.

{¶ 4} H.G. began attending the Marion Avenue Church when she was twelve years old, and moved in with her great aunt and uncle after her parents died. She began babysitting appellant's children when she was sixteen. When she was sixteen, she and appellant began kissing and fondling. One night, after eating dinner with appellant's family, H.G. went to the basement with appellant to spot him while he was working out. Appellant had H.G. perform oral sex on him. Appellant explained to H.G. that it wasn't sinful because it wasn't sex. On another occasion, appellant and H.G. were in the bedroom of appellant's home naked. Appellant digitally penetrated H .G.'s vagina, but appellant's son walked in before the encounter could go any further. H.G. left the area when she turned eighteen, but saw appellant one last time thereafter. Appellant drove her out into the country where they kissed and fondled each other, and H.G. performed oral sex on appellant.

. . .

{¶ 8} G.R. attended the youth group at the Marion Avenue Church. She had been sexually abused by her father. G.R. also babysat for appellant and Sherry. When G.R. was 13 and appellant was driving her home after babysitting, he pulled into a wooded area and asked her to perform oral sex on him. Appellant told her that he believed God put her in his life for this special relationship because there were things Sherry could not do for him. Appellant and G.R. began engaging in oral sex and sexual intercourse on a weekly basis when she babysat for his children. Sometimes in his office in the church he would place her on his lap, rub her breasts and her genital area, and have

her rub his genitals. During a game of hide and seek at a youth group overnighter at the church, appellant found G.R. hiding in the baptismal. He had G.R. perform oral sex on him in the baptismal. He told G.R. that he had consulted the Holy Spirit and had received peace that his relationship with G.R. was right. He told her that giving him oral sex was her God-given role as his comforter.

. . .

{¶ 11} In 2005, H.G. disclosed her involvement with appellant to a pastor at her new church. This pastor in turn relayed the allegations to the Marion Avenue church, and H.G. was called before a council of pastors. H.G.'s claims were discounted by the church, but the church held a series of meetings about whether to retain appellant as youth pastor. His other victims attended these meetings, either standing in full support of appellant or remaining silent. Many members of the church had become concerned about appellant's close relationships with young women in the congregation, with one member referring to the group as appellant's "harem." Tr. 229.

{¶ 12} Although the congregation voted to retain appellant, he resigned from the church and made plans to form his own church with members of his "family." These plans fell apart in January of 2005 when S.S. confessed her relationship with appellant to her husband.[1]

{¶ 13} Initially, police were not concerned with relationships between appellant and the girls after they turned 18, believing them to be consensual relationships between adults. Appellant was initially indicted in Case No. 08–CR–545 for sexual battery against H.G. and G.R. when they were juveniles. After the nature of the control and mental and spiritual coercion appellant exerted over the girls became apparent to police, the State moved to amend the indictment to include offenses against H.G. and G.R. after they turned 18, and to amend the statutory subsection in counts nine through sixteen, which related to H.G., to allege a violation of R.C. 2907.03(A)(1) rather than a violation of R.C. 2907.03(A)(9) because subsection (A)(9) was not in effect during the time period alleged in these counts.

(ECF No. 20-1, Exhibit 9); *State v. Picard*, No. 2009 CA 0108, 2010 WL 5480653, 2010-Ohio-6358 (5th Dist. Dec. 20, 2010).

---

[1] S.S. was an alleged victim in another case against Mr. Picard, case number 09-CR-111, which was consolidated for trial with case number 08-CR-545, the case at issue in this proceeding. The cases remained consolidated for purposes of Mr. Picard's direct appeal, and the Fifth Appellate District discussed facts from both cases in its opinion. As discussed below, the Sixth Circuit denied Mr. Picard leave to file a second or successive petition with respect to case number 09-CR-111. I have therefore omitted factual findings relating solely to that case.

### III.  PROCEDURAL HISTORY

#### A.  State Court Conviction

On August 8, 2008, Mr. Picard was indicted in the Richland County Court of Common Pleas in case number 08-CR-545 on (1) eight third-degree felony counts of sexual battery in violation of O.R.C. § 2907.03(A)(12); (2) four third-degree felony counts of sexual battery in violation of O.R.C. § 2907.03(A)(1); and (3) four third-degree felony counts of sexual battery in violation of O.R.C. § 2907.03(A)(9). (ECF No. 20-1, Exhibit 1). Mr. Picard was also indicted on similar charges involving other alleged victims in a separate case, case number 09-CR-111. (ECF No. 20-1, Exhibit 9, ¶ 14). On March 31, 2009, the trial court consolidated the two cases for trial. (ECF No. 20-1, Exhibit 3).

On August 18, 2009, shortly before trial, the trial court amended the indictment at the State's motion to "conform with the evidence and the law." (ECF No. 20-1, Exhibit 4). The amendments expanded the time frame of some of the charges and also changed the statutory provision under which Mr. Picard was being charged for a number of the counts.

The case proceeded to trial, and the jury convicted Mr. Picard on all charges. (ECF No. 20-1, Exhibit 5). On September 3, 2009, the trial court sentenced Mr. Picard to an aggregate term of 20 years in prison, to be served consecutively to Mr. Picard's sentence in case number 09-CR-111, for a total aggregate sentence of 40 years. *Id*.

#### B.  Direct Appeal

Mr. Picard, through the same counsel, timely filed a notice of appeal to the Fifth Appellate District. On March 15, 2010, Mr. Picard filed his appellate brief, raising the following assignments of error:

1. Defendant-Appellant's constitutional and statutory speedy trial rights were violated by the State's failure to bring him to trial within 270 days of his arrest.

2. The trial court erred in refusing to dismiss counts of the indictment which were filed after the expiration of the applicable statute of limitations.

3. Defendant-Appellant's constitutional and due process rights were violated by the general form of the indictments and bills of particulars and by repeated amendments to the indictments and refusal to permit grand jury transcript inspection, such that his convictions must be reversed.

4. The trial court erred in refusing to declare a mistrial, dismiss counts involving [G.R.], strike her testimony or instruct the jury as to the assertion of her Fifth Amendment rights.

5. The Defendant was denied due process by the State's failure to provide timely discovery, failure to provide evidence favorable to the accused and the State's misuse of pretrial supervision authority, such that the charges against him should have been dismissed.

6. The verdict forms do not support Defendant's convictions for 42 counts of sexual battery.

7. The trial court erred in convicting and sentencing the Defendant on duplicative counts.

(ECF No. 20-1, Exhibit 6).

On December 20, 2010, the Fifth Appellate District affirmed Mr. Picard's convictions and sentence. (ECF No. 20-1, Exhibit 9). On February 3, 2011, Mr. Picard, through new appellate counsel, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 20-1, Exhibit 10). On May 4, 2011, the Ohio Supreme Court declined to exercise jurisdiction over the appeal and dismissed the appeal as not involving any substantial constitutional question. (ECF No. 20-1, Exhibit 13).

### C. Rule 26(B) Application

On March 21, 2011, Mr. Picard, through new appellate counsel, filed an application to reopen his direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B), arguing that he received the ineffective assistance of appellate counsel during his initial appeal. (ECF No. 20-1, Exhibit 14). In particular, Mr. Picard argued that his original appellate counsel was

ineffective because counsel failed to argue that Mr. Picard's convictions on six counts of sexual battery in case number 08-CR-545 were not supported by sufficient evidence.

On April 14, 2011, the Fifth Appellate District granted Mr. Picard's application to reopen his appeal. (ECF No. 20-1, Exhibit 16). On December 23, 2011, the Fifth Appellate District affirmed Mr. Picard's convictions in part and reversed in part. (ECF No. 20-1, Exhibit 20). The court held that the evidence supported Mr. Picard's convictions with respect to three of the eight counts of sexual battery relating to one of the alleged victims, but that there was insufficient evidence to support his convictions with respect to the remaining five counts. Accordingly, the court vacated Mr. Picard's judgment of conviction and sentence with respect to those five counts. The court remanded the case to the trial court for resentencing.

### D.  Resentencing in Case Number 08-CR-545

On September 24, 2013, the trial court resentenced Mr. Picard in case number 08-CR-545, again imposing an aggregate sentence of 20 years to run consecutively with Mr. Picard's sentence in case number 09-CR-111, for a total sentence of 40 years. (ECF No. 20-1, Exhibit 34).

On October 15, 2023, Mr. Picard, through counsel, filed a notice of appeal to the Fifth Appellate District. (ECF No. 20-1, Exhibit 35). In his appellate brief, Mr. Picard raised the following assignments of error:

1. Whether the trial court violated the Defendant's due process rights by resentencing and vacating the charges on remand that the trial court ran concurrent where it was unclear which counts that the appeals court vacated.

2. Whether the trial court erred by re-sentencing the Defendant to the same term where the appellate court vacated five counts of sexual battery.

(ECF No. 20-1, Exhibit 36).

On June 27, 2014, the Fifth Appellate District affirmed. (ECF No. 20-1, Exhibit 38).

On September 14, 2014, Mr. Picard filed a notice of appeal to the Ohio Supreme Court, along with a motion for leave to file a delayed appeal. (ECF No. 20-1, Exhibits 39-40). On October 22, 2014, the Ohio Supreme Court denied Mr. Picard's motion for leave to file a delayed appeal and dismissed the appeal. (ECF No. 20-1, Exhibit 41).

### E. First Federal Habeas Petition

On August 1, 2011, Mr. Picard, acting *pro se*, filed a § 2254 habeas petition in the Southern District of Ohio, in a case captioned *Picard v. Miller*, case number 2:11-cv-712. (ECF No. 20-1, Exhibit 42). In his petition, Mr. Picard asserted seven grounds for relief:

1. Defendant/Petitioner's Constitutional and Statutory speedy trial rights were violated by the State's failure to bring him to trial within 270 days of his arrest.

2. The Trial Court erred in refusing to dismiss counts of the indictment which were filed after the expiration of the applicable statute of limitations.

3. Defendant/Petitioner's Constitutional Due Process rights were violated by the generic form of the indictments and bills of particulars and by repeated amendments to the indictments and refusal to permit grand jury transcript inspection.

4. The Trial Court erred to the prejudice of the Defendant-Petitioner when it refused to declare a mistrial, dismiss counts involving [G.R.], strike her testimony o[r] instruct the jury as to the assertion of her fifth amendment rights.

5. The Defendant-Petitioner was denied Due Process by the State's failure to provide timely discovery, failure to provide evidence favorable to the accused and the State's misuse of pretrial supervision authority, such that the charges against him should have been dismissed.

6. The verdict forms used do not support the Defendant-Petitioner's convictions for 42 counts of sexual battery.

7. The trial court erred to the prejudice of the Defendant-Petitioner by convicting and sentencing the Defendant-Petitioner on duplicative counts.

*Id*.

On April 2, 2012, the magistrate judge assigned to the case recommended that the court dismiss Mr. Picard's petition because his claims were waived, noncognizable, or

without merit. (ECF No. 20-1, Exhibit 43). On September 11, 2012, the court adopted the report and recommendation, dismissed Mr. Picard's petition, and denied him a certificate of appealability. (ECF No. 20-1, Exhibit 44).

### F. <u>Motion to Proceed to Judgment</u>

On June 4, 2014, Mr. Picard, acting *pro se*, filed a motion in the trial court in both cases to proceed to judgment, arguing that the trial court never properly ruled on his motion to dismiss for violation of his speedy trial rights. (ECF No. 20-1, Exhibit 47). The trial court construed the motion as a petition for postconviction relief and held that it was untimely and barred by the doctrine of res judicata. (ECF No. 20-1, Exhibit 50). Mr. Picard timely filed a notice of appeal to the Fifth Appellate District. (ECF No. 20-1, Exhibit 51). In his appellate brief, Mr. Picard raised the following assignments of error:

1. Whether the Trial Court violated the Defendant's due process and equal protection of the law rights by abusing its discretion or committing plain error when it attached res judicata to an action without a final appealable order.

2. Whether the Trial Court violated the Defendant's due process and equal protection of the law rights by abusing its discretion or committing plain error when it treated the MOTION TO PROCEED TO JUDGMENT as a no name motion and changed it to a petition for post conviction relief.

3. Whether the Trial Court violated the Defendant's due process and equal protection of the law rights by abusing its discretion or committing plain error when it decided the Defendant was raising claims that could have been raised on direct appeal when it retained jurisdiction by not providing a final appealable order.

4. Whether the Trial Court violated the Defendant's due process and equal protection of the law rights by abusing its discretion or committing plain error when it ruled the petition was untimely as the Trial Court made the decision to turn the motion into a post conviction and made it subject to its time frame.

5. Whether the Trial Court violated the Defendant's due process and equal protection of the law rights by abusing its discretion or committing plain error when it ignored Superintendent Rule 40 in not ruling on a motion before the Court for (5) years.

(ECF No. 20-1, Exhibit 52).

On February 5, 2015, the Fifth Appellate District affirmed. (ECF No. 20-1, Exhibit 55). Mr. Picard filed a timely appeal to the Ohio Supreme Court, raising the same propositions of law. (ECF No. 20-1, Exhibits 58-59). On June 24, 2015, the Ohio Supreme Court declined to accept jurisdiction over the appeal. (ECF No. 20-1, Exhibit 60).

### G.  **Petition for Writ of Procedendo**

On August 5, 2014, Mr. Picard, acting *pro se*, filed a petition in the Ohio Supreme Court for a writ of procedendo, again arguing that the trial court had failed to rule on his speedy trial motion. (ECF No. 20-1, Exhibit 61). On September 24, 2014, the Ohio Supreme Court granted the State's motion to dismiss Mr. Picard's petition. (ECF No. 20-1, Exhibit 64). Mr. Picard filed a motion for reconsideration, which the court denied. (ECF No. 20-1, Exhibits 65-66).

### H.  **Motion to Vacate Void Judgment**

On September 18, 2014, Mr. Picard filed a motion in the trial court to vacate void judgment, which he again based on alleged violations of his speedy trial rights. (ECF No. 20-1, Exhibit 67). On May 11, 2015, the trial court denied Mr. Picard's motion. (ECF No. 20-1, Exhibit 70). Mr. Picard did not appeal the trial court's ruling.

### I.  **Motion for Resentencing**

On February 5, 2015, Mr. Picard filed a motion in the trial court for resentencing, arguing that the trial court's sentencing entry was invalid because the entry failed to include the amount of restitution and instead improperly memorialized the restitution amount in a separate order. (ECF No. 20-1, Exhibit 71). On March 11, 2015, the trial court denied Mr. Picard's motion. (ECF No. 20-1, Exhibit 73).

On April 29, 2015, Mr. Picard filed a complaint for a writ of mandamus and/or procedendo in the Fifth Appellate District, raising the same argument. (ECF No. 20-1, Exhibit

74). On March 14, 2016, the Fifth Appellate District granted Mr. Picard a writ of mandamus, holding that the trial court failed to issue a final, appealable order in case number 09-CR-111 because it did not issue a single judgment entry containing the entire sentence, including the amount of restitution. (ECF No. 20-1, Exhibit 76). The Fifth Appellate District remanded the case to the trial court to enter a corrected sentencing judgment. *Id*.

On February 28, 2017, the trial court entered a revised sentencing entry in case number 09-CR-111, which included the restitution amount but did not otherwise change Mr. Picard's sentence. (ECF No. 20-1, Exhibit 78). Mr. Picard filed a motion for reconsideration, arguing that the trial court violated his constitutional rights by entering the revised sentencing judgment outside of his presence. (ECF No. 20-1, Exhibit 77). It is not clear from the record submitted in this case whether the trial court ever ruled on that motion.

On March 27, 2017, Mr. Picard filed a notice of appeal to the Fifth Appellate District from the trial court's resentencing entry. (ECF No. 20-1, Exhibit 79). In his appellate brief, Mr. Picard raised the following assignments of error:

1. The trial court erred in sentencing defendant-appellant outside of his presence violating Crim.R.43(A) and his 14th amendment of the U.S. Constitution as well as article I section 10 of Ohio's Constitution rights.

2. The trial court erred when defendant-appellant was not brought to trial within the speedy trial time frame causing prejudice and violating R.C. 2945.71 and his 6th and 14th amendments of the U.S. Constitution as well as article I, sections 10 and 16 of Ohio's Constitution rights.

3. The trial court erred in prosecuting, convicting and sentencing without subject-matter jurisdiction, indictment counts 17 and 18 (09 CR 111); violating defendant-appellant's 6th and 14th amendments of the U.S. Constitution as well as article I, sections 10 and 16 of Ohio's Constitution rights.

4. The trial court erred in prosecuting, convicting and sentencing for 5 counts (08 CR 545) with insufficient evidence; violating defendant-appellant's 5th and 14th amendments of the U.S. Constitution as well as article I, sections 10 and 16 of Ohio's Constitution rights.

5. The trial court erred by prosecuting, convicting, and sentencing for 17 counts (09 CR 111) with insufficient evidence; violating defendant-appellant's 5th and 14th amendments of the U.S. Constitution as well as article I, sections 10 and 16 of Ohio's Constitution rights.

6. The trial court erred in sentencing for crimes arising out of the same conduct and are allied offenses (09 CR 111), violating R.C. 2941.25(A) and defendant-appellant's double jeopardy, 5th and 14th amendments of the U.S. Constitution, as well as article I, section 10 of Ohio's Constitution rights.

7. The trial court erred in prosecuting, convicting and sentencing for crimes in which wrongfully amended indictments included dates outside of the dates filed in the original true bill indictments returned by the grand jury, counts 1-5 and 9-16 (08 CR 545) as well as co[u]nts 17 and 18 (09 CR 111), violating Crim.R. 7(D), and defendant-appellant's 14th amendment of the U.S. Constitution as well as article I, section 10 of Ohio's Constitution rights.

8. The defendant-appellant was denied a fundamentally fair trial, when defense counsel's representation fell below an objective standard of reasonableness violating his 6th and 14th amendments of the U.S. Constitution as well as article I, section 10 of Ohio's Constitution rights.

9. The trial court erred by denying defendant-appellant a fair trial, when enough prejudice, in cumulative effect, denied him fundamental fairness; violating his 14th amendment of the U.S. Constitution as well as article I, section 10 of Ohio's Constitution rights.

10. The trial court erred by the imposition of court costs without the opportunity to challenge the billing. The duplicative and erroneous charges violate defendant-appellant's 14th amendment of the U.S. Constitution as well as article I, section 10 of Ohio's Constitution rights.

(ECF No. 20-1, Exhibit 80).

On September 11, 2017, the Fifth Appellate District affirmed, holding that Mr. Picard's first assignment of error was without merit and that res judicata barred his remaining assignments of error. (ECF No. 20-1, Exhibit 83). Mr. Picard filed a motion for reconsideration, which the Fifth Appellate District denied. (ECF No. 20-1, Exhibits 84-85). Mr. Picard appealed to the Ohio Supreme Court. (ECF No. 20-1, Exhibit 86). In his memorandum in support of jurisdiction, he raised the following propositions of law:

1. The trial court erred in sentencing defendant-appellant outside of his presence violating Crim.R.43(A) and his 14th amendment of the U.S. Constitution as well as article I, section 10 of Ohio's Constitution rights.

2. The trial court erred in prosecuting, convicting and sentencing without subject-matter jurisdiction, indictment counts 17 and 18 (09 CR 000111); violating defendant-appellant's 6th and 14th amendments of the U.S. Constitution as well as article I, sections 10 and 16 of Ohio's Constitution rights.

(ECF No. 20-1, Exhibit 87). On January 31, 2018, the Ohio Supreme Court declined

to accept jurisdiction over the appeal. (ECF No. 20-1, Exhibit 88).

### J. Second Federal Habeas Petition

On July 13, 2018, Mr. Picard filed a second federal habeas petition in the United States

District Court for the Southern District of Ohio, in a case captioned *Picard v. Gray*, case

number 2:18-cv-00701. (ECF No. 20-1, Exhibit 89). In his petition, Mr. Picard raised the

following grounds for relief:

1. Petitioner was sentenced outside of his presence violating his rights under Amendments 5, 6, and 14 of the United States Constitution.

2. Petitioner was prosecuted, convicted and sentenced without subject-matter jurisdiction, indictment counts 17 and 18 (09 CR 000111); violating his rights under Article 2, Section 3 as well as Amendments 5, 6, and 14 of the United States Constitution.

*Id*.

On July 19, 2018, the Southern District of Ohio transferred the case to this Court.

(ECF No. 20-1, Exhibit 90). On September 28, 2018, the prior magistrate judge recommended

that the Court dismiss Mr. Picard's petition without prejudice and transfer it to the Sixth

Circuit as a second or successive petition under 28 U.S.C. § 2244(b). (ECF No. 20-1, Exhibit

92). On March 28, 2019, the Court adopted the magistrate judge's recommendation and

transferred the case to the Sixth Circuit. (ECF No. 20-1, Exhibit 93). On September 30, 2019,

the Sixth Circuit denied Mr. Picard's motion for leave to file a second or successive habeas

petition. (ECF No. 20-1, Exhibit 96).

**K.** **Motion for Leave to File Delayed Appeal**

On October 18, 2022, Mr. Picard, through counsel, filed a motion in the Fifth Appellate District for leave to file a delayed appeal to perfect his direct appeal, arguing that his trial counsel and initial appellate counsel were ineffective in numerous respects. (ECF No. 20-1, Exhibit 97). On November 8, 2022, the Fifth Appellate District summarily denied Mr. Picard's motion for leave. (ECF No. 20-1, Exhibit 100).

Mr. Picard timely appealed to the Ohio Supreme Court. (ECF No. 20-1, Exhibit 101). In his memorandum in support of jurisdiction, Mr. Picard raised the following propositions of law:

1. The Fourteenth Amendment to the U.S. Constitution guarantees the rights of Due Process, Equal Protection, and Fundamental Fairness.

2. Abuse of Discretion by the Fifth District Court of Appeals ignores binding, established law.

3. The First Amendment to the U.S. Constitution guarantees the right to Access to the Courts in order to Petition the Government for redress of a grievance.

(ECF No. 20-1, Exhibit 102). On February 28, 2023, the Ohio Supreme Court declined to accept jurisdiction over the appeal. (ECF No. 20-1, Exhibit 104).

**L.** **State Court Habeas Petitions**

On November 9, 2023, Mr. Picard filed a petition for a writ of habeas corpus in the Richland County Court of Common Pleas. (ECF No. 20-1, Exhibit 105). On November 17, 2023, the court dismissed Mr. Picard's petition for want of jurisdiction. *Id.*

On January 8, 2024, Mr. Picard filed a second state habeas petition in the Belmont County Court of Common Pleas. (ECF No. 20-1, Exhibit 106). In his petition, Mr. Picard argued that the indictments against him were improper because the clerk of courts failed to

endorse them. *Id*. On March 13, 2024, the court dismissed Mr. Picard's petition. (ECF No. 20-1, Exhibit 107).

On June 2, 2025, Mr. Picard filed a third state court habeas petition in the Belmont County Court of Common Pleas. (ECF No. 20-1, Exhibit 108). That petition, which does not raise any claims relevant here, remained pending at the time the Warden filed her traverse.

### M. **Third Federal Habeas Action**

On July 24, 2023, Mr. Picard, through counsel, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Picard's habeas petition raises the following grounds for relief:

1. Petitioner is being held in violation of the Constitution, laws, and treaties of the United States because no meaningful opportunity to raise his Ineffective Assistance of Counsel claims has been afforded, being improperly and wrongfully barred by procedural default, so that his 14th Amendment Constitutional Rights have been violated.

2. Petitioner is being held in violation of the Constitution, laws, and treaties of the United States since the Right to Conflict Free Appellate Counsel was Denied to him when the Trial Court assigned Trial Counsel as Appellate Counsel without Waiver, such that his 14th Constitutional Amendment right was violated.

3. Petitioner is being held in violation of the Constitution, laws, and treaties of the United States since the right to Effective Assistance of Counsel was denied at Trial and Appeal, such that his 6th and 14th Amendments Constitutional rights have been violated.

4. Petitioner is being held in violation of the Constitution, laws, and treaties of the United States since the same Trial Counsel, who failed to: prepare for Trial; failed to object to the Prosecutor's misconduct; failed to have any sort of defense theory; failed to have Defendant testify; and, failed to raise viable Sentencing arguments; represented in the foregoing Grounds, failed to raise Ineffective Assistance of Counsel as an Assignment of Error on Direct Appeal, such that his 6th and 4th [*sic*] Constitutional Amendment rights were violated and made the entire Direct Appeal process unreliable.

5. Petitioner is being held in violation of the Constitution, laws, and treaties of the United States because of the Cumulative Effect of the Trial errors, so that his 14th Constitutional Amendment rights to Due Process and Fundamental Fairness were violated.

*Id*.

14

On October 6, 2023, the Warden filed a motion to transfer Mr. Picard's petition to the Sixth Circuit as a second or successive petition pursuant to 28 U.S.C. § 2244(b). (ECF No. 6). On January 23, 2024, the Court granted the Warden's motion and transferred the petition to the Sixth Circuit. (ECF No. 8).

On September 6, 2024, the Sixth Circuit denied Mr. Picard's motion for leave to file a second or successive petition to the extent he challenged his convictions and sentences in case number 09-CR-111. (ECF No. 10). However, the court also held that Mr. Picard's motion was unnecessary to the extent he challenged his convictions and sentences in case number 08-CR-545 because his 2013 resentencing amounted to a "full resentencing" that constituted a "new judgment" postdating his prior habeas petition. *Id*. (quoting *King v. Morgan*, 807 F.3d 154, 156 (6th Cir. 2015)). The court remanded the matter to this court for further proceedings. *Id*.

Following remand, the Warden filed an answer/return of writ on July 11, 2025. (ECF No. 20). On August 4, 2025, Mr. Picard filed a *pro se* motion to strike the Warden's return of writ. (ECF No. 20). On August 5, 2025, I struck Mr. Picard's motion because he was still represented by counsel. (*See* ECF non-document entry dated August 5, 2025). On August 11, 2025, Mr. Picard's counsel filed a motion to withdraw (ECF No. 22), which I granted on the same day (ECF non-document entry dated August 11, 2025). I also informed Mr. Picard that, with his counsel's withdrawal, he could now refile his *pro se* motion to strike the Warden's return of writ.

Mr. Picard filed a traverse on September 8, 2025. (ECF No. 23). On September 15, 2025, Mr. Picard filed a notice to the Court stating that he could not refile his motion to strike due to prison constraints and expressing his hope that the Court retained a copy of the motion.

(ECF No. 24).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. <u>Jurisdiction</u>

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Richland County Court of Common Pleas sentenced Mr. Picard, and the Court takes judicial notice that Richland County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Picard's § 2254 petition.

### B. <u>Exhaustion and Procedural Default</u>

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S.

107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly

17

known as the "*Maupin*" factors.

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C.  Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and

procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D. AEDPA Standard of Review

AEDPA provides in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by

20

AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V.  ANALYSIS

Mr. Picard asserts five grounds for relief. The Warden argues that the Court should dismiss Mr. Picard's petition in its entirety as time-barred. Alternatively, the Warden argues that Mr. Picard procedurally defaulted on his first four grounds for relief and that his fifth ground is not cognizable. The Warden's arguments are well-taken.

### A.  **Mr. Picard's Motion to Strike**

Mr. Picard has moved to strike the Warden's traverse, arguing that the Warden improperly included facts regarding case number 09-CR-111 even though the Sixth Circuit denied him leave to file a second or successive petition with respect to that case. I agree with Mr. Picard that facts relating solely to case number 09-CR-111 are not relevant in light of the Sixth Circuit's ruling. However, rather than striking portions of the Warden's traverse, I will instead refuse to consider those facts when analyzing Mr. Picard's petition.

In his traverse, Mr. Picard also disputes the Warden's summary of facts regarding case number 08-CR-545, which the Warden quoted directly from the Fifth Appellate District's opinion on direct appeal. However, Mr. Picard has not shown by clear and convincing evidence that the Fifth Appellate District made a clear factual error based on the evidence

presented at trial, and thus has not shown that the Fifth Appellate District's factual findings were unreasonable. *Burt*, 571 U.S. at 18.

### B. <u>Statute of Limitations</u>

The Warden first argues that the Court should dismiss Mr. Picard's petition in its entirety because Mr. Picard filed it well after the applicable statute of limitations expired and because Mr. Picard is not entitled to any form of tolling. I agree.

AEDPA imposes a one-year statute of limitations upon all applications seeking a writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(1). Although the statute of limitations is "not jurisdictional," it "effectively bars relief absent a showing that the petitioner's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009). The one-year limitations period begins to run from the latest of four dates:

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Cases become final for purposes of § 2244(d)(1)(A) when the time to file a direct appeal has expired, including the time to file a petition for a writ of certiorari to the United States Supreme Court. *See Lawrence v. Florida*, 549 U.S. 327, 333 (2007). Here, the trial court resentenced Mr. Picard in case number 08-CR-545 on September 25, 2013. (ECF No.

20-1, Exhibit 34). The Sixth Circuit held that the resentencing order constituted a new judgment and is the relevant order for purposes of Mr. Picard's petition. (ECF No. 10).

Mr. Picard timely appealed the trial court's resentencing order to the Fifth Appellate District, which affirmed on June 27, 2014. (ECF No. 20-1, Exhibits 34, 38). Mr. Picard failed to timely appeal the Fifth Appellate District's ruling to the Ohio Supreme Court, and instead filed an untimely notice of appeal and motion for leave to file a delayed appeal on September 2, 2014, which the Ohio Supreme Court denied on October 22, 2014. (ECF No. 20-1, Exhibits 39-41). It is not clear that Mr. Picard's unsuccessful motion for a delayed appeal served to delay the start of the limitations period. Out of an abundance of caution, however, I will assume that the statute of limitations did not start until after the Ohio Supreme Court denied Mr. Picard's motion for leave to take a delayed appeal.

Mr. Picard had 90 days from the Ohio Supreme Court's decision, or until January 20, 2015, to file a petition for a writ of certiorari in the United States Supreme Court. *See* Sup. Ct. R. 13. Mr. Picard did not do so, so the one-year statute of limitations began running the next day and expired on January 20, 2016. Mr. Picard did not file his habeas petition until July 24, 2023, more than seven years later. (ECF No. 1). His petition is therefore untimely unless either statutory or equitable tolling applies.[2]

---

[2] Mr. Picard argues that the Sixth Circuit already determined that his claims are timely because the court held that his petition could proceed with respect to case number 08-CR-545. Mr. Picard misconstrues the Sixth Circuit's ruling. The only issues before the court were whether Mr. Picard's petition was a second or successive petition and, if so, whether he was entitled to an order authorizing the district court to consider it. (ECF No. 10). The Sixth Circuit held that Mr. Picard's petition was not second or successive because the 2013 resentencing constituted a full resentencing resulting in a new judgment such that Mr. Picard had not "trigger[ed] the gatekeeping requirements applicable to second or successive § 2254 petitions." *Id*. at PageID # 1932. Nothing in the court's opinion purported to address whether Mr. Picard's petition was timely or whether he procedurally defaulted on his claims.

### 1.  *Statutory Tolling*

§ 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Accordingly, "[t]he one-year period of limitations is tolled" while a properly filed application state post-conviction or other collateral review is pending. *Keeling v. Warden, Lebanon Corr. Inst*., 673 F.3d 452, 459 (6th Cir. 2012) (quoting 28 U.S.C. § 2244(d)(2)).

The Warden concedes that Mr. Picard's petition for a writ of procedendo (ECF No. 20-1, Exhibit 61) and his motion to vacate void judgment (ECF No. 20-1, Exhibit 67) were properly filed state court petitions that tolled the statute of limitations. The trial court decided the later of those motions, Mr. Picard's motion to vacate void judgment, on May 11, 2015. (ECF No. 20-1, Exhibit 70). Under Ohio Appellate Rule 4(A)(1), Mr. Picard had 30 days, or until June 10, 2015, to file a notice of appeal to the Fifth Appellate District. *See* Ohio App. R. 4(A)(1). Mr. Picard did not appeal the trial court's ruling, so the statute of limitations began running on June 11, 2015. Absent additional tolling, it expired a year later, on June 12, 2016.

Mr. Picard also filed a motion to proceed to judgment in June 2014 (ECF No. 20-1, Exhibit 47), which the trial court construed as a petition for postconviction relief and denied on both timeliness and res judicata grounds. (ECF No. 20-1, Exhibit 50). The Fifth Appellate District affirmed, agreeing that Mr. Picard's petition was both untimely and barred by res judicata. (ECF No. 20-1, Exhibit 55). It is well-settled that an untimely postconviction petition is not "properly filed" for purposes of § 2244(d)(2). *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 ("When a postconviction petition is untimely under state law, 'that [is] the end of the

matter' for purposes of § 2244(d)(2).") (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)).[3]

Mr. Picard's second federal habeas petition, which he filed in July 2018, likewise did not toll the statute of limitations, as a federal habeas petition cannot toll the limitations period under § 2244(d)(2). *See Duncan v. Walker*, 533 U.S. 167, 181 (2001).

Finally, Mr. Picard filed a motion in the Fifth Appellate District for leave to file a delayed appeal or perfect his direct appeal on October 18, 2022. (ECF No. 20-1, Exhibit 97). However, it is well-settled that statutory tolling under § 2244(d)(2) "does not . . . 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quotation omitted); *see also Keeling*, 673 F.3d at 462 ("Because the one year statute of limitations period had already expired when Keeling filed the motion, statutory tolling does not apply."). Here, the one-year statute of limitations expired long before Mr. Picard filed his motion for leave to file a delayed appeal. Accordingly, that motion did not toll the limitations period, and statutory tolling cannot save Mr. Picard's claims.

### 2. *Equitable Tolling*

AEDPA's one-year statute of limitations is not jurisdictional, and a court may still entertain an untimely petition if the petitioner is entitled to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). If a petitioner seeks equitable tolling, he must show that: (1) he pursued his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *See Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010)

---

[3] Mr. Picard also filed two challenges to his sentence in 2015, arguing that the trial court's 2009 sentencing entry was invalid because the trial court failed to include the restitution amount in the sentencing entry. (ECF No. 20-1, Exhibits 71, 75). However, Mr. Picard's challenge related only to his sentence in case number 09-CR-111, and thus did not impact his sentence in case number 08-CR-545. *See* ECF No. 20-1, Exhibit 76, ¶ 2 (noting that the separate restitution orders Mr. Picard challenged "represent restitution owed to separate victims in Case Number 09-CR-111"); ECF No. 20-1, Exhibit 78 (resentencing Mr. Picard in case number 09-CR-111 only).

(citing *Holland*, 560 U.S. at 649); *Keeling*, 673 F.3d at 462. "Equitable tolling is granted sparingly and is evaluated on a case-by-case basis, with the petitioner retaining the 'ultimate burden of persuading the court that he or she is entitled to equitable tolling.'" *Keeling*, 673 F.3d at 462 (quoting *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011)).

Mr. Picard argues that he received the ineffective assistance of appellate counsel because the same counsel represented him at trial and on appeal. He also asserts that the alleged ineffectiveness of his appellate counsel "pertains to the statute of limitations." (ECF No. 23, PageID # 4314). Construing his *pro se* arguments broadly, I will assume that Mr. Picard is arguing that he is entitled to equitable tolling on the basis of ineffective assistance of counsel. Ineffective assistance of counsel can constitute an extraordinary circumstance that would entitle a petitioner to equitable tolling. *See Keeling*, 673 F.3d at 462. But "[d]espite the presence of such circumstances, the statute of limitations will only be tolled if the circumstances were both beyond the control of the litigant and unavoidable with reasonable diligence." *Id*.

Mr. Picard has not explained how his appellate counsel's alleged ineffectiveness prevented him from complying with the one-year statute of limitations. This is not a case where Mr. Picard claims that his appellate counsel failed to timely inform him of an appellate decision. *See id*. (noting that a "substantial, involuntary delay in learning about the status of [a petitioner's] appeals" may constitute an extraordinary circumstance) (quoting *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir. 2011)). Instead, Mr. Picard argues that his appellate counsel was ineffective because counsel also represented Mr. Picard at trial and could not raise his own ineffectiveness as trial counsel as an issue on appeal.

Even assuming counsel's ineffectiveness could constitute an extraordinary

26

circumstance, Mr. Picard has not shown that he pursued his rights diligently. The Fifth Appellate District decided Mr. Picard's direct appeal on December 20, 2010. (ECF No. 20-1, 9). Mr. Picard was resentenced on September 25, 2013 (ECF No. 20-1, Exhibit 34), and did not file his habeas petition until July 24, 2023 (ECF No. 1). While he did file several state court petitions and federal habeas petitions during that time, there are also lengthy gaps in the state record, including a three-year period between September 2019 and October 2022 where Mr. Picard did not pursue any claims. Mr. Picard has not explained the lengthy delay, and I therefore cannot conclude that he acted diligently. *See Shank v. Marquis*, No. 1:18-cv-01262, 2020 WL 13836622, at *9 (N.D. Ohio Sept. 15, 2020) (report and recommendation) ("Even assuming arguendo that Shank's counsel's handling of his direct appeal and/or handling of his post-conviction proceedings amounted to ineffective assistance of counsel, he has failed to explain how their actions excuse him from waiting until 2018 to pursue his federal habeas claim."); *McCloud v. Luneke*, No. 5:24-cv-01523, 2025 WL 1798301, at *12 (N.D. Ohio June 30, 2025), *report and recommendation adopted*, 2025 WL 2717261 (N.D. Ohio Sept. 24, 2025) (holding that petitioner did not pursue rights diligently where he delayed in filing state court motions, including a four-year delay before filing motion to reopen direct appeal).

A petitioner may also be entitled to equitable tolling if he shows that he is actually innocent of the offenses for which he was convicted. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). To qualify for the actual innocence exception, a petitioner must "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup*, 513 U.S. at 329). Mr. Picard has not presented new, reliable evidence demonstrating that no reasonable juror would have voted to convict him, and is therefore not entitled to equitable tolling on actual

27

innocence grounds. Accordingly, his petition is untimely, and I recommend that the Court dismiss the petition in its entirety as time-barred. Out of an abundance of caution, however, I will also consider the Warden's procedural default and cognizability arguments.

## C. Procedural Default

The Warden next argues that Mr. Picard procedurally defaulted on grounds one through four because he did not fairly present them to the state courts at the first available opportunity. Because the procedural default analysis varies somewhat for each of Mr. Picard's claims, I will consider them in turn.

### 1. *Denial of Opportunity to Raise Ineffective Assistance Claims*

In his first ground for relief, Mr. Picard asserts that his due process rights were violated because the state courts did not give him a meaningful opportunity to raise his ineffective assistance of counsel claims. Mr. Picard raised the substance of this claim for the first time in his October 2022 motion for leave to file a delayed appeal, which the Fifth Appellate District denied without explaining its reasoning. Despite the Fifth Appellate District's unexplained order, however, I agree with the Warden that Mr. Picard procedurally defaulted on this claim.

With respect to the first *Maupin* factor, Ohio has several state procedural rules that are applicable to Mr. Picard's claim and that he failed to comply with. First, Ohio Rule of Appellate Procedure 4(A)(1) provides that a defendant must appeal a final order within 30 days of the entry of the order. *See* Ohio App. R. 4(A)(1). Second, Ohio Rule of Appellate Procedure 5(A)(1) provides that a criminal defendant may pursue a delayed appeal only with leave of court. *See* Ohio App. R. 5(A)(1). Finally, Ohio's res judicata doctrine prohibits a defendant from raising a claim in a postconviction proceeding that the defendant could have raised on direct appeal or in an earlier postconviction petition. *See Hanna v. Ishee*, 694 F.3d

28

596, 613-14 (6th Cir. 2012); *Williams v. Coyle*, 260 F.3d 684, 695 (6th Cir. 2001).

The second *Maupin* factor is whether the state courts actually enforced the state procedural bar. *Maupin*, 785 F.2d at 138. Normally, a habeas court answers that question by looking to the last explained state court judgment. *Ylst*, 501 U.S. at 805. Here, however, there is no last explained state court judgment, as both the Fifth Appellate District and the Ohio Supreme Court issued summary denials. (ECF No. 20-1, Exhibits 100, 104). The second *Maupin* factor thus presents a "closer question." *Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 223 (6th Cir. 2019). However, Supreme Court precedent "dictates . . . that when a state court issues such a summary denial and the grounds given by the prosecution for doing so are solely questions of state procedure, the decision fairly appears to rest on state law." *Id*. (citing *Coleman*, 501 U.S. at 740); *see also Whitson v. Clipper*, No. 1:14cv2718, 2015 WL 3905104, at *2-3 (N.D. Ohio June 25, 2015) (holding that petitioner procedurally defaulted on claims where state courts denied Rule 5(A) motion even though both appellate court and Ohio Supreme Court denied motion "without comment").

Here, the State opposed Mr. Picard's motion for leave on state law grounds, arguing that Mr. Picard "has availed himself of this Court many times and has given this Court no acceptable reason for it to accept his untimely appeal." (ECF No. 20-1, Exhibit 98, PageID # 3122). And, although the State admittedly argued the merits Mr. Picard's due process claims in its brief to the Ohio Supreme Court, it primarily argued that Mr. Picard's motion was untimely and that res judicata barred his claims. (ECF No. 20-1, Exhibit 103). I therefore conclude that the state courts enforced a state procedural bar notwithstanding their summary orders.

The third *Maupin* factor asks whether the state procedural bar constitutes an adequate

and independent state ground. *Maupin*, 785 F.2d at 138, It is well-settled that both Ohio's res judicata rule and its deadlines for filing appeals are adequate and independent state grounds. *See Hand v. Houk*, 871 F.3d 390, 410 (6th Cir. 2017) ("it is established law in this circuit that an Ohio court's application of the doctrine of *res judicata* is an independent and adequate state ground sufficient to bar habeas relief"); *Stone v. Moore*, 644 F.3d 342, 348 (6th Cir. 2011) (holding that denial of Rule 5(A) motion on timeliness grounds constitutes adequate and independent state ground).

That leaves the question of whether Mr. Picard can demonstrate both cause for his failure to follow the state procedural rules and prejudice to excuse his default. *Maupin*, 785 F.2d at 138. Mr. Picard again argues that the Court should excuse any procedural default because the Sixth Circuit held that his claims could proceed. As noted above, Mr. Picard misconstrues the Sixth Circuit's opinion, which decided only whether that his petition was not second or successive for purposes of 28 U.S.C. 2244.

Mr. Picard also argues that his procedural default should be excused because he received the ineffective assistance of appellate counsel. Ineffective assistance of counsel can constitute cause to excuse a procedural default. *See Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013). "However, 'an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.'" *Id*. (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)). As discussed below, Mr. Picard procedurally defaulted on his ineffective assistance of appellate counsel claims, and any alleged ineffectiveness thus cannot serve to excuse his procedural default. Nor has Mr. Picard presented new, reliable evidence establishing that he is actually innocent of the crimes for which he was convicted, as required to invoke the fundamental miscarriage of justice

30

exception. *See Schlup*, 513 U.S. at 324. I there for recommend that the Court dismiss Mr. Picard's first ground for relief as procedurally defaulted.

### 2. *Ineffective Assistance of Trial Counsel*

In his third ground for relief, Mr. Picard argues that his trial counsel was ineffective in at least sixteen different ways. Mr. Picard did not present any of those claims in his direct appeal to the Fifth Appellate District. As the Warden concedes, however, Ohio courts do not apply res judicata to ineffective assistance of trial counsel claims where trial counsel also serves as appellate counsel. *See State v. Lentz*, 639 N.E.2d 784, 786, 70 Ohio St. 3d 527, 530 (1994) ("*res judicata* does not apply when trial and appellate counsel are the same, due to the lawyer's inherent conflict of interest"); *Hicks v. Collins*, 384 F.3d 204, 211 (6th Cir. 2004) (noting that, under Ohio law, "if the defendant was represented by the same counsel at trial and on direct appeal, claims of ineffective assistance of trial counsel are not defaulted because appellate counsel will rarely assert his own ineffectiveness at trial") (emphasis omitted). Instead, "where the state appellate court would decline to review claims [of] ineffective assistance of trial counsel on direct appeal, the appropriate mechanism for asserting such claims is a petition for post-conviction relief pursuant to Ohio Revised Code § 2953.21." *Kelly v. Lazaroff*, No. 5:14CV1217, 2015 WL 4546996, at *8 n.2 (N.D. Ohio July 28, 2015) (report and recommendation) (citing *Lentz*, 639 N.E. 2d at 786, 70 Ohio St. 3d at 530).

The trial court construed Mr. Picard's June 2014 motion to proceed to judgment as a petition for postconviction relief. (ECF No. 20-1, Exhibit 50). However, Mr. Picard did not assert any ineffective assistance of counsel claims in that petition, instead arguing only that the trial court violated his speedy trial rights. *Id*.

Mr. Picard first raised some of his ineffective assistance of trial counsel subclaims in his appeal from the trial court's February 2017 resentencing order in case number 09-CR-

111. (ECF No. 20-1, Exhibit 80). However, the Fifth Appellate District held that res judicata barred Mr. Picard's claims. (ECF No. 20-1, Exhibit 83). The Ohio Supreme Court then declined to accept jurisdiction without comment, leaving the Fifth Appellate District's decision as the last explained state court judgment. (ECF No. 20-1, Exhibit 88).

Mr. Picard subsequently raised all of his ineffective assistance of trial counsel subclaims in his October 2022 motion for leave to file a delayed appeal. (ECF No. 20-1, Exhibit 97). As discussed above, the state courts applied a procedural bar to deny his motion. (ECF No. 20-1, Exhibits 100, 104). Mr. Picard has therefore procedurally defaulted on his ineffective assistance of trial claims.

Mr. Picard argues that his procedural default should be excused under two Supreme Court cases, *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), because Ohio law channeled his ineffective assistance of trial counsel claims into a postconviction petition and because he did not have counsel during the postconviction proceedings.

In *Martinez*, the Supreme Court recognized a "narrow exception" to *Coleman*'s general rule that ineffective assistance of counsel in connection with a postconviction petition cannot excuse a procedural default because a defendant has no constitutional right to counsel in postconviction proceedings. 566 U.S. at 9. Under that exception "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id*. at 17. In *Trevino*, the Court expanded *Martinez*'s scope, holding that *Martinez* also applies where a "state procedural

framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal . . . ." 569 U.S. at 429.

The Sixth Circuit does not appear to have decided whether *Martinez* and *Trevino* apply in Ohio where a defendant is represented by the same attorney at trial and on appeal. *See Mammone v. Jenkins*, 49 F.4th 1026, 1048 (6th Cir. 2022) (noting that the Sixth Circuit "ha[s] not yet decided whether *Martinez* and *Trevino* apply to Ohio cases generally"). Given Ohio's efforts to channel ineffective assistance of trial counsel claims under those circumstances toward petitions for postconviction relief, it seems plausible that *Martinez* and *Trevino* could apply. I need not definitely answer that question in this case, however, as the *Martinez*/*Trevino* exception requires that the petitioner have a "substantial" claim of ineffective assistance of trial counsel. Here, while Mr. Picard asserts numerous ineffective assistance of trial counsel subclaims, none of those claims is "substantial."

A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

Under the first prong of *Strickland*, the petitioner must overcome the "strong[] presum[ption that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The *Strickland* standard is "extremely deferential." *Kelly v. Lazaroff*, 846 F.3d 819, 829 (6th Cir. 2017)

33

(quoting *Strickland*, 466 U.S. at 690). "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Id*. (quoting *Strickland*, 466 U.S. at 687).

Mr. Picard argues that his trial counsel was ineffective in sixteen separate ways: (1) failing to review the State's file in preparation for trial; (2) not objecting to the generic language of the indictments; (3) not objecting to the consolidation of case numbers 08-CR-545 and 09-CR-111 for trial; (4) not objecting when the indictments were amended two days before trial to change the statute under which Mr. Picard was charged; (5) not objecting when the indictments were amended two days before trial to change the time frame of the charges; (6) not objecting to the prosecution's allegedly misleading statements to the jury; (7) not objecting to the prosecution's alleged failure to turn over discovery; (8) failing to object to the excessive number of counts against Mr. Picard; (9) not arguing that the evidence was insufficient with respect to certain counts; (10) not objecting to the trial court's alleged bias in adjudicating the speedy trial issue; (11) not offering any defense; (12) not permitting Mr. Picard to testify at trial; (13) failing to object to the trial court's erroneous application of Ohio's sentencing factors; (14) failing to raise viable sentencing arguments or raise mitigating factors; (15) not filing a motion for acquittal under Ohio Rule of Criminal Procedure 29; and (16) not arguing that Mr. Picard's convictions were for allied offenses of similar import.[4]

Because of Mr. Picard's procedural defaults, the state courts never addressed the merits of those subclaims. However, the Fifth Appellate District did address on the merits

---

[4] Mr. Picard also asserts that counsel should have argued that the Ohio courts lacked jurisdiction over certain counts that allegedly took place in Vermont. Mr. Picard's argument relates solely to counts from case number 09-CR-111 and is not relevant to this proceeding. (ECF No. 1, PageID # 31-32).

several of the underlying arguments that Mr. Picard asserts his trial counsel was ineffective for failing to raise. In particular, the Fifth Appellate District addressed Mr. Picard's underlying arguments that: (1) the indictments were impermissibly generic; (2) his due process rights were violated when the indictments were amended shortly before trial; (3) the prosecution failed to turn over discovery; (4) his speedy trial rights were violated; and (5) he was sentenced to consecutive terms for allied offenses of similar import. (ECF No. 20-1, Exhibit 6). The Fifth Appellate District held that each of those arguments was without merit (ECF No. 20-1, Exhibit 9), and Mr. Picard has not shown that the Fifth Appellate District's ruling was contrary to or unreasonably applied clearly established law, and Mr. Picard's trial counsel was not ineffective in failing to raise meritless arguments. *See Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) ("Given the prejudice requirement [of *Strickland*], 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). I will now turn to the claims that the Ohio courts did not address in any fashion.

### a. *Failure to Prepare for Trial*

Mr. Picard first asserts that his counsel failed to adequately prepare for trial. To support that argument, he cites to a single statement that one of his lawyers made during a colloquy with the trial court regarding speedy trial issues. The court noted that the prosecution had an "open file" policy and asked Mr. Picard's counsel whether they had reviewed the State's materials. (ECF No. 20-2, PageID # 3281). As part of her argument, Mr. Picard's counsel stated that they "didn't go through the State's file . . . ." *Id*. at PageID # 3282.

While it is troubling that Mr. Picard's counsel may not have reviewed the State's discovery in full, I cannot conclude from this single statement that Mr. Picard's counsel was unprepared for trial. The Sixth Circuit's decision in *Mason v. Mitchell*, 320 F.3d 604 (6th Cir.

2003), is instructive. There, the petitioner's trial counsel informed the court a week before trial that he had not personally interviewed any witnesses and stated that it would be "a great error for [him] to continue" as counsel and that he could not "do so in good conscience and under the professional standards of the code of responsibility . . . ." *Id.* at 617-18. The court nonetheless held that counsel's performance was not "so deficient as to be objectively unreasonable" because the "totality of the circumstances" did not suggest counsel was unprepared. *Id.* at 618. In particular, the court noted that counsel filed numerous pretrial motions and argued several pretrial hearings. *Id.*

Mr. Picard's claim is weaker than the petitioner's claim in *Mason*. His counsel did not inform the court that they were unprepared to proceed. Rather, one of his attorneys made a single statement while arguing a motion indicating that counsel had not reviewed the State's entire file. And, like the counsel in *Mason*, Mr. Picard's attorneys filed multiple pretrial motions, including a motion to dismiss on speedy trial grounds. In addition, my review of the trial transcripts indicates that counsel conducted detailed cross-examination of the prosecution's witnesses that reflects constitutionally adequate trial preparation.

Even assuming that counsel was not adequately prepared for trial, Mr. Picard has not demonstrated prejudice. He does not argue that there was any specific information in the State's file that would have bolstered the defense. Nor does he argue that information in the State's file would have identified additional areas for investigation that his counsel should have pursued. *See Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002) ("This Court has held that a petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material.").

### b.  Failure to Object to the Prosecution's Alleged Misconduct

Mr. Picard next asserts several subclaims alleging that his trial counsel provided ineffective assistance by failing to object to the prosecution's "misconduct" during trial.

Mr. Picard first argues that the prosecution engaged in misconduct when it moved to consolidate the cases for trial, which allegedly prejudiced him because the jury presumed his guilt based solely on the sheer number of charges that he faced. As the Sixth Circuit has held, "[T]here is always a potential for prejudice when claims are tried together . . . " *Raver v. Brunsman*, 381 F. App'x 558, 562 (6th Cir. 2010) (citation and quotations omitted). But, under *Strickland*, a petitioner must show that such prejudice actually occurred. *Id*. Mr. Picard has not made that showing here. Instead, he argues only that two potential jurors expressed concerns about their ability to be impartial because of the number of charges Mr. Picard faced. One of those jurors was excused, while the other said she believed she could listen to the evidence with an open mind. (ECF No. 20-2, PageID # 3310-11, 3341). Based on that limited evidence, I cannot conclude that Mr. Picard has presented a substantial question regarding whether the consolidation prejudiced him or whether his trial counsel was ineffective in failing to object to it. For similar reasons, Mr. Picard's argument that the prosecution engaged in misconduct by "stacking" an excessive number of counts to tarnish him in the eyes of the jury does not present a substantial question of ineffective assistance of counsel.

Mr. Picard next argues that the prosecution engaged in misconduct when it prosecuted him on five counts in case number 08-CR-545 for which was there was insufficient evidence of sexual conduct. However, Mr. Picard already prevailed on that claim in his Rule 26(B) application. (ECF No. 20-1, Exhibit 20). As a result, the Fifth Appellate District vacated those convictions and the trial court resentenced Mr. Picard. Mr. Picard has not explained what additional relief the Court can provide.

Mr. Picard further argues that his counsel was ineffective in failing to object to the prosecution's allegedly-improper statements that he was a member of the clergy and abused his position to coerce the alleged victims into sexual activities. Mr. Picard argues that the prosecution's references to him as "clergy" were inaccurate and that the State was forced to amend the indictment to remove its incorrect theory. The Fifth Appellate District dealt with the underlying substance of this argument on direct appeal, holding that the State pursued a consistent theory that Mr. Picard used the religious beliefs of the victims and his relationship with them to coerce them into sex. (ECF No. 20-1, Exhibit 9, ¶ 94). The Fifth Appellate District also found that Mr. Picard met the victims through his position as a youth pastor. *Id*. at ¶¶ 2-3. Given the prosecution's theory of the case and the state courts' factual findings, Mr. Picard's trial counsel was not ineffective in failing to assert meritless objections.

### c.  *Failure to Mount a Defense*

Mr. Picard next argues in several subclaims that his trial counsel was ineffective in failing to mount a defense at trial. He first asserts that his counsel did not have "any defense theory whatsoever" and "failed to conduct any meaningful adversarial challenge." (ECF No. 1, PageID # 46). The trial record belies Mr. Picard's argument, and instead reflects that counsel extensively cross-examined the alleged victims, attempting to undermine their credibility and the prosecution's theory of the case.

Mr. Picard also argues that his counsel was ineffective because counsel did not make any opening statement. However, "[a]n attorney's decision not to make an opening statement is ordinarily a mere matter of trial tactics and . . . will not constitute . . . a claim of ineffective assistance of counsel." *Millender v. Adams*, 376 F.3d 520, 525 (6th Cir. 2004) (quotations omitted). Moreover, "[e]ven if this decision was not a strategic one, [Mr. Picard] has not articulated how the absence of an opening statement prejudiced him." *Moss v. Hofbauer*, 286

F.3d 851, 864 (6th Cir. 2002).

Mr. Picard further argues that his counsel was ineffective because counsel did not call any witnesses. But Mr. Picard has not identified any particular witnesses (other than himself) that he believes his counsel should have called, and thus has not demonstrated prejudice. *See Duram v. Howard*, No. 2:20-CV-13429, 2024 WL 388089, at *7 (E.D. Mich. Feb. 1, 2024) (holding that ineffective assistance claim failed where petition failed to offer "any evidence beyond her own assertions as to whether there were witnesses who would have testified and what the content of their testimony would have been"); *Hedelsky v. United States*, No. 4:18-cv-51, 2020 WL 377021, at *6 (E.D. Tenn. Jan. 23, 2020) (holding that counsel's decision not to put on affirmative evidence constituted reasonable trial strategy where petitioner did not "identif[y] any witnesses he contends should have been called or about what those witnesses would have testified"). Similarly, while Mr. Picard faults his trial counsel for not presenting an alibi defense, he does not identify any alibi witnesses counsel should have called. Nor does he actually assert that he had an alibi on any of the relevant dates. Instead, Mr. Picard argues only that he traveled frequently and that offering alibi evidence would have "forced specificity" from the State. (ECF No. 1, PageID # 46). Because Mr. Picard has not provided reason to believe he had a viable alibi defense, his counsel was not ineffective in failing to offer one.

Similarly, while Mr. Picard argues that his trial counsel was ineffective because counsel did not move for a judgment of acquittal pursuant to Ohio Rule of Criminal Procedure 29, counsel does not provide ineffective assistance by failing to make a meritless motion under Crim.R. 29. *See Freeman v. Fender*, No. 1:19-cv-1599, 2021 WL 606358, at *10 (N.D. Ohio Jan. 5, 2021), *report and recommendation adopted*, 2021 WL 602957 (N.D. Ohio Feb.

16, 2021); *Morris v. Hudson*, No. 5:06CV2446, 2007 WL 4276665, at *13 (N.D. Ohio Nov. 30, 2007) (report and recommendation). With the exception of the five counts that the Fifth Appellate District already granted Mr. Picard relief on, he has not shown that a Crim.R. 29 motion would have had merit.

Finally, Mr. Picard argues that his counsel was ineffective because counsel did not call Mr. Picard to testify despite Mr. Picard's desire to so do. To prevail on this claim, Mr. Picard must "present record evidence that he somehow alerted the trial court to his desire to testify." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009). Mr. Picard has not done so. As a result, he has not "overcome the presumption that he assented to the tactical decision that he not testify." *Id*. Mr. Picard also has not demonstrated prejudice because he "gives no details about the substance of his testimony" and has not provided any reason to believe that his testimony would have changed the outcome. *Id*. at 640.

### d. Errors at Sentencing

In his last category of alleged ineffective assistance, Mr. Picard challenges his counsel's performance at sentencing. He argues that his trial counsel was ineffective because counsel did not object to the trial judge's alleged misstatements, including that Mr. Picard was a clergy member and that he "molested" his victims. Mr. Picard also argues that trial counsel was ineffective in failing to challenge the trial court's application of Ohio's sentencing factors and for failing to argue that the factors supported a more lenient sentence.

"Where ineffective assistance at sentencing is asserted, prejudice is established if the movant demonstrates that his sentence was increased by the deficient performance of his attorney." *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007) (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)). "Movants must 'affirmatively prove prejudice.'" *Id*. (quoting *Strickland*, 466 U.S. at 693). "If 'one is left with pure speculation on whether the

outcome of . . . the penalty phase could have been any different,' there has been an insufficient showing of prejudice,'" *Id.* (quoting *Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004)). Mr. Picard has not shown that his counsel's allegedly deficient performance at sentencing prejudiced him. Instead, he has left the court with "pure speculation" that he would have received a more lenient sentence had his counsel objected to the trial court's statements or made additional mitigation arguments.

In sum, while Mr. Picard asserts numerous ineffective assistance of trial counsel subclaims, he has not shown that any of those claims are "substantial" for purposes of the *Martinez/Trevino* exception. Accordingly, Mr. Picard has not established cause to excuse his procedural default, and I recommend that the Court dismiss his third ground for relief as procedurally defaulted.

### 3. *Ineffective Assistance of Appellate Counsel*

In Grounds Two through Four, Mr. Picard asserts that he received the ineffective assistance of appellate counsel during his direct appeal. The Warden is again correct that Mr. Picard procedurally defaulted on these claims.

In Ohio, a defendant may raise a claim for ineffective assistance of appellate counsel through a Rule 26(B) application. *See* Ohio R. App. P. 26(B); *Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 828 (6th Cir. 2019). After the Fifth Appellate District affirmed his convictions and sentence on direct appeal, Mr. Picard filed a Rule 26(B) application through new appellate counsel. (ECF No. 20-1, Exhibit 14). In that application, however, Mr. Picard argued only that his original appellate counsel was ineffective in failing to challenge whether the evidence was sufficient to convict him on five counts.

Mr. Picard first raised the remaining ineffective assistance of appellate counsel claims he asserts in this proceeding in his October 2022 motion for leave to file a delayed appeal. As

discussed above, the Fifth Appellate District enforced a state procedural bar when it denied Mr. Picard's motion, and the Ohio Supreme Court affirmed. (ECF No. 20-1, Exhibits 100, 104). Mr. Picard has thus procedurally defaulted on his ineffective assistance of appellate counsel claims.

Mr. Picard again has not established cause to excuse his procedural default. The Supreme Court held in *Davila v. Davis* that the *Martinez/Trevino* exception "treats ineffective assistance by a prisoner's state postconviction counsel as cause to overcome the default of a single claim—ineffective assistance of trial counsel—in a single context—where the State effectively requires a defendant to bring that claim in state postconviction proceedings rather than on direct appeal." 582 U.S. 521, 524-25 (2017). Accordingly, the Supreme Court expressly refused to extend *Martinez* and *Trevino* to claims for ineffective assistance of appellate counsel. *Id.* at 529. Additionally, Mr. Picard cannot argue that his new appellate counsel provided ineffective assistance in connection with his Rule 26(B) application. "[C]ounsel's failures in connection with a Rule 26(B) application cannot serve as cause to excuse a procedural default because there is no right to counsel at that stage." *McClain v. Kelly*, 631 F. App'x 422, 437 (6th Cir. 2015). Mr. Picard has not provided any other basis to excuse his procedural default. I therefore recommend that the Court alternatively dismiss Mr. Picard's ineffective assistance of appellate counsel claims as procedurally defaulted.

### D.  Cognizability

Finally, the Warden  argues that Mr. Picard's fifth ground for relief, in which he asserts that the cumulative effect of the errors at trial violated his due process rights, is not cognizable in a federal habeas proceeding. I agree. The Sixth Circuit has "held that, post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005);

*see also Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue"). I therefore alternatively recommend that the Court dismiss Mr. Picard's fifth ground for relief as non-cognizable.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.  Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue

or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)].."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.  Analysis

Mr. Picard has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS Mr. Picard's petition for a writ of habeas corpus under 28 U.S.C. § 2254. I also recommend that the Court not grant him a certificate of appealability.

Dated:  November 4, 2025                          */s/ Jennifer Dowdell Armstrong*
                                                 Jennifer Dowdell Armstrong
                                                 U.S. Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for

such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Id. (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).